## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## BROWARD DIVISION

| | | |
|---|---|---|
| **TODD ALAN DUPELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** |
| | ) | |
| **THE SCHOOL BOARD OF BROWARD** | ) | |
| **COUNTY, FLORIDA AND** | ) | |
| **CHAMPIONSHIP ACADEMY OF** | ) | |
| **DISTINCTION AT DAVIE, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Todd Alan Dupell, (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files his Complaint against Defendant, The School Board of Broward County, Florida ("SBBC"), and Defendant Championship Academy of Distinction at Davie, Inc. ("CAD-Davie") (SBBC and Championship Academy are hereinafter referred to collectively as "Defendants"), and states as follows:

## JURISDICTION AND VENUE

1.      This is an action by Plaintiff for compensatory and punitive damages, and declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), the Florida Civil Rights Act ("FCRA"), and under Florida state law to redress injury caused by Defendants' disparate treatment based on or motivated by his gender, sexual orientation, and/or religion, retaliation against his protected conduct. This is also an action for compensatory and punitive damages, declaratory, and injunctive relief under Title VII, the FCRA, and other Florida state laws.

SALAS LAW FIRM, P.A.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and Title VII. This Court has supplemental jurisdiction of the other state law claims pursuant to 28 U.S.C. § 1367.  Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.      Defendant SBBC employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.      Defendant CAD-Davie employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

5.      Venue is proper in Broward County (28 U.S.C. § 89(c)), because each Defendant does business in Broward County, and some or all of the acts alleged herein took place in Broward County.

6.      Defendants are each incorporated in Florida, conduct business in Florida and all of the acts and omissions occurred to Plaintiff while he worked at Championship Academy of Davie (3367 North University Drive, Davie, Florida, 33024).

7.      As set forth further herein, it is unclear whether Plaintiff's employer at the time of his wrongful termination was Defendant SBBC or Defendant CAD-Davie.

8.      To the extent necessary, Plaintiff alleges that Defendants were Plaintiff's joint employer, in that although SBBC and CAD-Davie are in fact, separate entities, SBBC retains for itself sufficient control of the terms and conditions of the employment of Plaintiff.

9.      Plaintiff is a former resident of Broward County, a resident through November 2019, and his present address is located in Oakland, California.

10.     All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

11.     On or about October 31, 2019, Plaintiff, filed a Charge of Discrimination with the Miami Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2020-00698.  A true and correct copy of Plaintiff's charge is attached hereto as **Exhibit "A"**.

12.     On or about November 21, 2019, the EEOC issued a right-to-sue letter, and this lawsuit is timely filed. A true and correct copy is attached hereto as **Exhibit "B"**.

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

13.     Plaintiff is a member of the Center for Spiritual Living Church, a church similar to the Unitarian Church.

14.     Plaintiff's sexual orientation is gay.

15.     Prior to the end of his employment in August 2019, Plaintiff was the Principal of the Championship Academy of Distinction (CAD) School in Davie, Florida ("CAD-Davie").

16.     At all times relevant to this lawsuit, Defendants and their agents knew of Plaintiff's gender and sexual orientation.

17.     At all times relevant to this lawsuit, Defendants and their agents knew Plaintiff identified as a member of the Center for Spiritual Living Church and/or knew that he was not a member of, for example, the Jewish faith.

18.     On or about April 1, 2019, CAD-Davie, through its representative Cindy Dotson, hired Plaintiff to serve as principal of its Davie campus, an existing charter school set to re-open to students on August 14, 2019.

19.     On or about April 1, 2019, Plaintiff signed a document styled "Annual Contract of Employment, Principal, Davie Campus K-8, for the 2018/2019 school year. On or about June 8,

2019, Plaintiff signed another document styled "Annual Contract of Employment, Principal, Davie Campus K-8," for the 2019/2020 school year.

20.     The Contract includes the following language: "CAD employees are not employed by the School Board of Broward County."

21.     Pursuant to Florida Law (Marjory Stoneman Douglas High School Public Safety Act or "the Act"), all schools in Broward County, including CAD-Davie location, require that a security guard with certain guardian training be present at the school at all times during school hours.

22.     On August 1, 2019, at a meeting of all Broward County principals, Plaintiff complained to Mr. Brian Katz (SBBC's Chief Safety, Security & Emergency Preparedness Officer) about the lack of trained guardians available to schools before the August school start date.

23.     Also at this meeting, Plaintiff asked Mr. Katz for the names of security companies in Broward County that had "ready to go" guardian trained security guards.

24.     Mr. Katz said in response that Broward Sherriff's Office would cover compliance with the Act for the first two weeks of school, including Plaintiff's school.

25.     On information and belief, Defendants and their agents knew or should have known (at least) as of August 1, 2019 there was an insufficient number of law enforcement and/or security personnel prior (available and trained to comply with the Act) by August 14, 2019.

26.     After being hired as principal, Plaintiff arranged to have a security guard present on the first day of class, Mr. Steve Carbone, for the safe school officer requirement.

27.     Mr. Carbone had yet to receive the Act's requisite guardian training (though he was signed up for the September 2019 BSO Guardian Training Course).

28.     On August 9, 2019, Mr. Katz informed Plaintiff that per Broward Sherriff's Office, that the Davie, Florida Police Department would provide a police officer/guard at CAD-Davie campus on August 14, 2019, to ensure CAD-Davie was compliant with the Act.

29.     It was Plaintiff's understanding that Mr. Carbone's presence on campus coupled with the arrangement agreed upon with the Davie Police Department to have a Davie Police Officer was sufficient (and perhaps more than sufficient) to comply with the Act.

30.     Prior to the first day of school, Plaintiff and other members of his staff, including CAD-Davie's Office Manager Laurie Williamson, contacted and worked with Davie Police Department (including Lieutenant Patricia Ravie, and Christopher Chastain, Operations Bureau Commander Davie Police) to ensure the school was in compliance with the Act.

31.     Prior to the first day of school, no one with CAD or SBBC informed Plaintiff or anyone at CAD-Davie that it was in violation of the Act.

32.     August 14, 2019 was the first day of school at CAD-Davie.

33.     Mr. Carbone was present on campus that day.

34.     Given the assurances from Mr. Katz, it was Plaintiff's understanding that a Davie policeman was also present on campus while the school day began.

35.     The first day of school is hectic, and, at the start of the school day that morning, Plaintiff was busy dealing with morning student drop-off and other administrative duties.

36.     Soon after and just after morning announcements, Dietre Adams of SBBC arrived on campus for an unannounced compliance visit.

37.     Ms. Adams informed Plaintiff that it was evident that the Davie Police Department did not, in fact, have a police officer on campus.

38.     Plaintiff presumed that the promised Davie police officer was present, and that he had not seen him that morning due to the congestion at the student drop-off line.

39.     At no time did Ms. Adams or anyone else tell Plaintiff to close the school.

40.     At no time did Ms. Adams or anyone else tell Plaintiff that anyone on campus was in imminent danger or in danger of any kind.

41.     Plaintiff told Ms. Adams that Mr. Carbone, was present on campus, and that he was slated for the September 2019 training.

42.     Ms. Adams remarked that it was "smart" that Plaintiff had backup.

43.     Ms. Adams left the building, only to return briefly afterwards, stating that she spoke with Mr. Katz via telephone and that he requested that Plaintiff send a copy Plaintiff's school's contract with Davie Police to Mr. Katz.

44.     After Ms. Adams's visit, SBBC emailed CAD's Board asserting that there was a compliance issue with the Act at Plaintiff's school, even though Mr. Katz had previously informed Plaintiff that Davie Police would be covering security on the first day of school.

45.     That day, Plaintiff replied asking the SBBC for assistance in collaborating to facilitate access to trained security personnel.

46.     On August 15, 2019, the next day with school open to students (and no instruction to close the school or any suggestion of imminent danger), three SBBC officials (Mr. Katz, Ms. Adams, and another female) and one from the Florida Department of Education (Damien Kelly (Director, Office of Safe Schools for the Florida Department of Education) arrived on the CAD-Davie campus. A meeting was held by these SBBC personnel with Plaintiff that day.

47.     At this meeting, Plaintiff asked Mr. Kelly and the other SBBC personnel for the names of security companies in Broward County that had "ready to go" guardian trained security guards.

48.     Plaintiff reminded them that they were required by the Act to collaborate to facilitate access to trained guardians for the schools, to address the requirements of the Act. Fla. Stat. § 1006.12 ("A district school board must *collaborate with charter school governing boards to facilitate charter school access* to all safe-school officer options available under this section.") (emphasis added).

49.     At least as of this meeting, SBBC had not been working with, and had no proof that they acted in collaboration with, CAD-Davie or Plaintiff to facilitate charter school access to all safe-school officer options.

50.     Immediately after Plaintiff reminded the SBBC personnel about the collaboration / facilitation requirement, Mr. Kelly stood up and left the room.

51.     It is Plaintiff's understanding that Mr. Kelly called the Davie police to ensure Davie police were working with CAD-Davie to ensure a police offer was present on campus.

52.     Prior to Plaintiff's termination (and on information and belief for all of 2019), the day of August 14th and about four hours of August 15th were the only periods of time there was not an armed Davie police officer present on Plaintiff's school's campus in addition to Mr. Carbone (*i.e.* otherwise since August 15, 2019, CAD-Davie was in compliance with the Act).

53.     Defendants and their agents were on notice and/or knew the reason(s) behind both Plaintiff securing Mr. Carbone's services for the first week of school and scheduling him for the BSO Guardian Training Course, as well as was working with the Davie Police Department to

ensure compliance with the Act, at least because Defendants knew of the shortage of guards "ready to go" and properly trained pursuant to the Act.

54.     On August 16, 2019, Commander Chastain informed Plaintiff that his office was working on the language of a revised contract between Davie Police and CAD-Davie to guarantee coverage compliant with the Act.

55.     Commander Chastain confirmed with Plaintiff that there would be an officer present on school days until the contract was finalized.

56.     Of note, during the meeting to sign the aforementioned contract (on August 19, 2019) with Mr. Chastain, it was revealed that a separate meeting had taken place between SBBC and Davie Police Department in late July or early August 2019 where access to Guardian trained officers, contract language, and compliance with the Act was discussed for charter schools.

57.     Neither Plaintiff nor CAD-Davie's employees or agents were invited to this meeting earlier in late July or early August 2019.

58.     SBBC successfully secured coverage for all public schools, but never collaborated with charter schools (at least those operating within the town or police department of Davie) on exactly how to facilitate access to safe-school officers for charter schools, like Plaintiff's.

59.     On August 20, 2019, at a board meeting of the SBBC, CAD-Davie's charter was revoked based on alleged non-compliance with the Act.

60.     At the meeting, SBBC revoked CAD-Davie's charter, and, according to SBBC, therefore, all employees of CAD-Davie were, upon this revocation, employees of SBBC.

61.     This revocation occurred despite the fact the Board, at this meeting, was presented with a letter from the office of the Florida Department of Education effectively imploring the Board not to revoke the charter.

62.     On information and belief, Plaintiff was treated less favorably than comparator employees of Defendants outside of his protected classes, including Principals, in the terms and conditions of his employment, including concerning discipline.

63.     On information and belief, Plaintiff was treated less favorably than comparator employees of Defendants outside of his protected classes, including Principals, including because there was no meeting called to discuss compliance with the Act nor were any other principals fired.

64.     On information and belief, myriad other schools under SBBC's purview were out of compliance for longer than Plaintiff's school was out of compliance, *i.e.* more than one-and-a-half days.

65.     That day after the meeting on August 20, 2019, Plaintiff complained to Leslie Brown (SBBC's Chief Portfolio Services Officer) that SBBC's decision to revoke the CAD-Davie charter was unfair and effectively treated Plaintiff differently and less favorably than other Principals and schools in Broward County.

66.     Plaintiff also complained to Ms. Brown that other schools were having issues with compliance with the Act and nothing happened to them.

67.     Plaintiff also informed Ms. Brown to "google [his] name" in an attempt to highlight to her that Plaintiff was a person of integrity; someone who has dedicated nearly two decades to students and families, and did not want his reputation or career affected by Defendants' handling of his school's charter and the termination of his employment.

68.     Specifically, based on Defendants and their agents' statements both at the Board meeting and to the press, Defendants attempted to besmirch Plaintiff's character and/or negatively affect professional reputation by false or misleading statements to third parties: including that: on information and belief, Plaintiff was the only principal terminated on the basis his/her school was

non-compliant with the Act and/or to have his/her school's charter revoked and/or who worked for a school who was not in compliance with the Act; Plaintiff expressly or implicitly put students in danger by his school not being in compliance with the Act; and generally that it was in some way Plaintiff's fault (by allegedly not attempting to secure or in fact securing proper coverage under the Act) that CAD-Davie school was in non-compliance, even though Defendants knew first-day compliance with the Act was unlikely or nearly impossible given the shortage of properly BSO trained security guards.

69.     Plaintiff believed Ms. Brown/SBBC would discover in an internet search information about Plaintiff's status as a Florida Supreme Court Certified Family Mediator and/or Plaintiff's seat on the Board of the Family Life Coaching Association, thereby assuring her that Plaintiff was not a person that would put students in Plaintiff's care in any danger of any kind.

70.     However, given his later disparate and unfair treatment by Defendants, including by being terminated, on information and belief, Plaintiff believes Ms. Brown/SBBC also discovered a news article(s) referencing that Plaintiff acted as a "whistleblower" at a previous employer (position of Principal) concerning what Plaintiff believed were unlawful practices and his associated whistleblower complaint.

71.     At the end of their meeting, Ms. Brown instructed Plaintiff to come to CAD-Davie campus the next day to aid in the transition of control of the school to SBBC.

72.     No one from CAD-Davie or SBBC ever informed Plaintiff expressly or otherwise that he was terminated.

73.     It became clear with the passage of time from August 14 to August 22, 2019, that Plaintiff was terminated at some unknown point, likely on August 21, 2019, and his status as a "guest" the next day at the CAD-Davie school.

74.     On August 21, 2019, Plaintiff went to the CAD-Davie campus as instructed by SBBC and assisted with turning over the school to SBBC.

75.     It was during this process that Ms. Brown remarked that Plaintiff was there as a "guest."

76.     On August 22, 2019, Plaintiff emailed Ms. Brown for clarity about his employment status, and Ms. Brown responded: "As you are under contract with the Management Company [a/k/a Defendant CAD-Davie], you will need to reach out to them for how your continued work will be negotiated and compensated."

77.     Also that day, Ms. Dotson told Plaintiff, "you don't work for me."

78.     On information and belief, many other schools in Broward County, including, for example, Ben Gamla Preparatory Academy in Hollywood, Florida (a religiously affiliated public charter school, affiliated with the Jewish faith), were not compliant with the Act concerning the safe school officer requirement, including compliant when school began (*i.e.* not in compliance on August 14th, August 15th and after).

79.     A reason for Plaintiff's information and belief about discrimination against him as compared with other schools' Principals, on August 22, 2019, as reported in a floridapolitics.com article, the article stated, *inter alia*: "In Broward County, more than two dozen charter schools failed to have long-term plans for full-time, armed security by the time the new school year."

80.     The article further stated "on Tuesday, the Broward County School Board took the unprecedented step of taking over a charter school that did not have a security contract in place when classes resumed last week," referring to Plaintiff and his school.

81.     A reason for Plaintiff's belief about disparate treatment compared with other schools' principals, on January 8, 2020, as reported in a floridapolitics.com article ("Broward

Superintendent, local mayors ask for up to $60M to help fix school resource officer funding gap"),
Superintendent Robert R. Runcie was quoted as stating: "Should we even have the money
available, we couldn't meet the numbers today just given the fact there are so many vacancies [in
law enforcement]." (alternation in original).

82.     On information and belief, Ben Gamla Preparatory Academy was not in compliance
with the Act for more days/hours than Plaintiff's CAD-Davie School was not in compliance in
2019, including information and belief from local news stories about noncompliance with the Act.

83.     On information and belief, Ben Gamla Preparatory Academy's principal is Gayle
Iacono.

84.     On information and belief, Ben Gamla Preparatory Academy's principal's sexual
orientation is different than Plaintiff's.

85.     On information and belief, Ben Gamla Preparatory Academy's principal is not of
the same religious faith as Plaintiff.

86.     On information and belief, around twenty other schools in Broward County were
not in compliance with the Act, including for longer than one-and-a-half days; however, none of
their principals were terminated for non-compliance with the Act, and, on information and belief,
these persons are outside of Plaintiff's protected classes.

87.     On information and belief, Plaintiff was treated less favorably than comparator
employees of Defendants outside of his protected classes, including Principals of other Broward
County Schools, in the terms and conditions of his employment, including concerning discipline.

88.     On information and belief, Plaintiff was treated less favorably than comparator
employees of Defendants outside of his protected classes, including Principals of other Broward
County Schools, in the terms and conditions of his employment including because there was no

meeting called (like the charter revocation meeting on August 20, 2019) to review compliance with the Act.

89. Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his gender and/or sexual orientation was factor or a motivating factor(s) for Defendants' discriminatory and retaliatory termination.

90. Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his religion was factor or a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

91. Defendants are or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that they are so liable.

92. On September 17, 2019, the Fort Lauderdale City Commission voted unanimously to amend Broward County's Ordinance § 4001.1 to protect LGBTQ residents, which added language to the "Nondiscrimination Policy Statement" which now provides, in pertinent part:

> . . . shall not discriminate … against employees . . . [or] contractors. [SBBC] is committed to the provision of equal access in all … employment … and operations that are operated or provided directly by the board, as well as those operated or provided by another entity on behalf of [SBBC] under contractual or other arrangements. This policy is established to provide an environment free from discrimination and harassment based upon … religion, sex or sexual orientation.

93. On information and belief, in August 2019, Defendants knew that the City Commission would approve the LGBTQ amendments to § 4001.1 aimed at protecting persons like Plaintiff later in 2019 and/or that the vote approving on the amendments would occur and/or that the vote approving the amendments would occur in September 2019.

94.     Plaintiff acknowledges that the pending decision by the Court in *Bostock v. Clayton County, Georgia*, 139 S. Ct. 1599 (No. 17-1618) (granting certiorari), may or likely will affect whether certain claims of his lawsuit may proceed.

<u>**Count I – Title VII Disparate Treatment (Gender/Sexual Orientation) –Discipline & Termination**</u>[1]

95.     Plaintiff realleges all of the preceding paragraphs of this complaint.

96.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

97.     Plaintiff is a member of a protected class, male.

98.     Plaintiff is a member of a protected class based on his sexual orientation, gay.

99.     Plaintiff was qualified for his position.

100.     Plaintiff suffered an adverse employment action(s), discipline without any warning on August 20-21, 2019, resulting in his (effective) termination on or about August 22, 2019.

101.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-gay and/or female Principals (and perhaps comparators with other positions who are similarly situated to Plaintiff) named or referenced in the complaint, his replacement, and other comparator persons presently known and unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them, not resulting in termination of employment and/or by being informed of their termination or the reason therefor, one way or the other.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

102.    Defendants intended to discriminate and did discriminate on the basis of gender, sexual orientation and/or "because of … sex," and/or Plaintiff's protected characteristic, status as a gay male and/or his gender, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated his employment.

103.    Defendants' discrimination concerned one or more of the activities enumerated in Title VII.

104.    As a result of the aforementioned conduct, Defendants violated Title VII.

105.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant(s) is, in reality, a pretext for unlawful discriminatory treatment.

106.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

107.    Defendants have failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

108.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on his gender, sexual orientation and/or that the violations of his rights were continuing in nature by Defendants.

109.    As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**<u>Count II – FCRA Disparate Treatment (Gender/Sexual Orientation) – Discipline & Termination[2]</u>**

---

[2] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

110.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

111.    Plaintiff has completed all necessary pre-requisites to bringing his claims under FCRA.

112.    Plaintiff is a member of a protected class, male.

113.    Plaintiff is a member of a protected class based on his sexual orientation, gay.

114.    Plaintiff was qualified for his position.

115.    Plaintiff suffered an adverse employment action(s), discipline without any warning on August 20-21, 2019, resulting in his (effective) termination on August 22, 2019.

116.    Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-gay and/or female Principals named or referenced in the complaint, his replacement, and other comparator persons presently known and unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them, not resulting in termination of employment and/or by being informed of their termination or the reason therefor, one way or the other.

117.    Defendants intended to discriminate and did discriminate on the basis of gender, sexual orientation and/or "because of … sex," and/or Plaintiff's protected characteristic, status as a gay male and/or his gender, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated his employment.

118.    Defendants' discrimination concerned one or more of the activities enumerated in the FCRA.

119.    As a result of the aforementioned conduct, Defendants violated the FCRA.

SALAS LAW FIRM, P.A.

120.     Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

121.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

122.     Defendants have failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

123.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on his gender, sexual orientation and/or that the violations of his rights were continuing in nature by Defendants.

124.     As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count III – Title VII Disparate Treatment (Religion) – Discipline & Termination

125.     Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

126.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

127.     Plaintiff is a member of a protected class, of the Center for Spiritual Living Church.

128.     Plaintiff was qualified for his position.

129.     Plaintiff suffered an adverse employment action(s), discipline without any warning on August 20-21, 2019, resulting in his (effective) termination on August 22, 2019.

130.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those persons not of Plaintiff's chose religion named or

referenced in the complaint, his replacement, and other comparator persons presently known and unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them, not resulting in termination of employment and/or by being informed of their termination or the reason therefor, one way or the other.

131.    Defendants intended to discriminate and did discriminate on the basis of religion, and/or Plaintiff's protected characteristic, status as member of the Center for Spiritual Living Church, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated his employment.

132.    Defendants' discrimination concerned one or more of the activities enumerated in Title VII.

133.    As a result of the aforementioned conduct, Defendants violated Title VII.

134.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

135.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

136.    Defendants has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

137.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on his religion and/or that the violations of his rights were continuing in nature by Defendants.

138.    As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IV – FCRA Disparate Treatment (Religion) – Discipline/Termination

139.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

140.    Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

141.    Plaintiff is a member of a protected class, of the Center for Spiritual Living Church.

142.    Plaintiff was qualified for his position.

143.    Plaintiff suffered an adverse employment action(s), discipline without any warning on August 20-21, 2019, resulting in his (effective) termination on August 22, 2019.

144.    Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those persons not of Plaintiff's chose religion named or referenced in the complaint, his replacement, and other comparator persons presently known and unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them, not resulting in termination of employment and/or by being informed of their termination or the reason therefor, one way or the other.

145.    Defendants intended to discriminate and did discriminate on the basis of religion, and/or Plaintiff's protected characteristic, status as member of the Center for Spiritual Living Church, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated his employment.

SALAS LAW FIRM, P.A.

146.    Defendants' discrimination concerned one or more of the activities enumerated in the FCRA.

147.    As a result of the aforementioned conduct, Defendants violated the FCRA.

148.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

149.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

150.    Defendants has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

151.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engage in a pattern and practice of disparate treatment based on his religion and/or that the violations of his rights were continuing in nature by Defendant.

152.    As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count V – Title VII Retaliation

153.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

154.    Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

155.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, disparate, non-investigated, and inconsistent discipline in August 2019 through his termination, by not starting an investigation into his complaint of unfair treatment concerning implementation of

the Act as compared with other schools controlled by Defendants, by being terminated for a reasons others were not terminated for (or receiving less discipline for similar (alleged) errors), and for not being provided notification of his termination whereas others outside his protected classes were provided with notice and/or a reason for termination.

156.    Plaintiff engaged in a statutorily protected activities, at least by complaining to Mr. Katz on August 1, 2019 (and to Mr. Kelly on August 15, 2019) about the lack of trained guardians available for the August 2019 start date (including no disclosure of names of guards "ready to go" for the start date) and/or in the process of researching Plaintiff, Ms. Brown became aware or found out that he was previously a whistleblower with a former employer, and by alerting SBBC and CAD-Davie employees that Plaintiff's school and he were being treated less favorably than other schools and their principals concerning evaluation of compliance with the Act, and being terminated days later.

157.    Defendants damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining and terminating him unfairly, unjustly, inaccurately, implausibly, and inconsistently after he complained.

158.    There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment, Defendants' discovering previous participation and complaints at a past employer of Plaintiffs, and his termination from Defendants.

159.    Any purported legitimate reason for Plaintiff's discipline and/or termination given by Defendant(s) is, in reality, a pretext for its unlawful retaliation.

160.    As a result of the aforementioned conduct, Defendants violated Title VII.

SALAS LAW FIRM, P.A.

161.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in him suffering injury and being damaged.

162.    Defendants has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

163.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendants.

164.    As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VI – FCRA Retaliation

165.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

166.    Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

167.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, disparate, non-investigated, and inconsistent discipline in August 2019 through his termination, by not starting an investigation into his complaint of unfair treatment concerning implementation of the Act as compared with other schools controlled by Defendants, by being terminated for a reasons others were not terminated for (or receiving less discipline for similar (alleged) errors), and for not being provided notification of his termination whereas others outside his protected classes were provided with notice and/or a reason for termination.

168.     Plaintiff engaged in a statutorily protected activities, at least by complaining to Mr. Katz on August 1, 2019 (and to Mr. Kelly on August 15, 2019) about the lack of trained guardians available for the August 2019 start date (including no disclosure of names of guards "ready to go" for the start date) and/or in the process of researching Plaintiff, Ms. Brown became aware or found out that he was previously a whistleblower with a former employer, and by alerting SBBC and CAD-Davie employees that Plaintiff's school and he were being treated less favorably than other schools and their principals concerning evaluation of compliance with the Act, and being terminated days later.

169.     Defendants damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining and terminating him unfairly, unjustly, inaccurately, implausibly, and inconsistently after he complained.

170.     There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment, Defendants' discovering previous participation and complaints at a past employer of Plaintiffs, and his termination from Defendants.

171.     Any purported legitimate reason for Plaintiff's discipline and/or termination given by Defendant(s) is, in reality, a pretext for its unlawful retaliation.

172.     As a result of the aforementioned conduct, Defendants violated the FCRA.

173.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in him suffering injury and being damaged.

174.     Defendants has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

175.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendants.

176.     As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

<u>**Count VII – Title VII/FCRA Retaliation – Failure to Investigate**</u>

177.     Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

178.     Plaintiff engaged in a statutorily protected activities, at least by complaining to Mr. Katz on August 1, 2019 (and to Mr. Kelly on August 15, 2019) about the lack of trained guardians available for the August 2019 start date (including no disclosure of names of guards "ready to go" for the start date) and/or in the process of researching Plaintiff, Ms. Brown became aware or found out that he was previously a whistleblower with a former employer and by alerting SBBC and CAD-Davie employees that Plaintiff's school and he were being treated less favorably than other schools and their principals concerning evaluation of compliance with the Act, and being terminated days later.

179.     Defendants failed to investigate Plaintiff's complaints of a lack of "ready to go" security personnel in advance of the August 14, 2019 start date.

180.     Defendants' failure to investigate constituted a threat of future harm to Plaintiff and/or led to demonstrable harm to Plaintiff (*i.e.* his termination), because a timely investigation would have revealed that Plaintiff attempted to comply with the Act and contacted Defendants and Davie and Broward County Police to comply, and further that he nor his school should have been

punished (e.g. termination and charter revocation) merely because of non-compliance with the Act and/or that compliance was impossible or close given the lack of properly trained security guards.

181.     This failure to investigate led to demonstrable harm to Plaintiff; namely, that had Defendants investigated the complaints, they would have confirmed to Plaintiff that his school would not be able (or was very unlikely to be able) to comply with the Act regarding a trained and compliance security officer.

182.     Defendants damaged and retaliated against Plaintiff in the terms and conditions of his employment, by retaliating against him for not investigating his complaints.

183.     There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment and/or requests for assistance from Defendants' agents with compliance with the Act, their failure to investigate, and Plaintiff's termination.

184.     Any purported legitimate reason for Plaintiff's discipline and/or termination given by Defendant(s) is, in reality, a pretext for its unlawful retaliation.

185.     As a result of the aforementioned conduct, Defendants violated Title VII and the FCRA.

186.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered adverse employment actions in termination after he complained, resulting in him suffering injury and being damaged.

187.     Defendants has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

188.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendants.

189.     As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VIII - Negligence Per Se – Violation(s) of Broward County Ordinance § 4001.1

190.     Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

191.     As of August 2019, Broward County Ordinance § 4001.1 protected persons like Plaintiff from adverse employment actions based on or motivated by his/her religion.

192.     Plaintiff was and is of the class of persons the Ordinance was designed and/or specifically enacted to protect a specific class of persons from particular harm.

193.     Defendants violated the ordinance by terminating Plaintiff because his religion was a motivating factor in its wrongful termination decision.

194.     Defendants had a duty to Plaintiff to comply with the ordinance.

195.     Defendants breached that duty.

196.     As a direct and proximate result of Defendants' breach of their duties by discriminating against Plaintiff, Plaintiff has suffered damages in negligence and the duty and breach portions of his prima facie negligence case are established by Defendants' violation of the ordinance. Plaintiff is thereby entitled to compensatory and punitive damages as awarded by the jury.

### Count IX - Negligence Per Se – Violation(s) of Broward County Ordinance § 4001.1

197.     Plaintiff realleges and incorporates paragraphs 1-93 as if fully set forth herein.

198.     As of August 2019 (and at least as of September 2019), Broward County Ordinance § 4001.1 protected persons like Plaintiff from adverse employment actions based on or motivated by an aggrieved person's sexual orientation.

199.    On information and belief, Plaintiff alleges that § 4001.1 applies to Plaintiff, including because, to date, no one from either Defendant has expressly informed Plaintiff that he has been terminated, and/or § 4001.1 applies retroactively, including applying to the termination of Plaintiff's employment in August 2019.

200.    Plaintiff was and is of the class of persons the Ordinance, as amended, was designed and/or specifically enacted to protect a specific class of persons from particular harm.

201.    Defendants violated the ordinance by terminating Plaintiff because his sexual orientation was a motivating factor in its wrongful termination decision.

202.    Defendants had a duty to Plaintiff to comply with the ordinance.

203.    Defendants breached that duty.

204.    As a direct and proximate result of Defendants' breach of their duties by discriminating against Plaintiff, Plaintiff has suffered damages in negligence and the duty and breach portions of his prima facie negligence case are established by Defendants' violation of the ordinance. Plaintiff is thereby entitled to compensatory and punitive damages as awarded by the jury.

### Count X - Negligence Per Se – Violation(s) of Florida Statute § 1006.12

205.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

206.    Florida Statute § 1006.12 protected persons like Plaintiff from the actions of SBBC and the school district's superintendent when they failed to partner with CAD-Davie/Plaintiff to "establish or assign one or more safe-school officers at each school facility within the district, including charter schools."

207.    Plaintiff was and is of the class of persons the statute was designed and/or specifically enacted to protect a specific class of persons from particular harm.

208.    Defendants violated the ordinance by failing to collaborate to facilitate the timely presence of safe-school officers at Plaintiff's school.

209.    Defendants had a duty to Plaintiff to comply with the ordinance.

210.    Defendants breached that duty.

211.    As a direct and proximate result of Defendants' breach of their duties by failing to comply with the collaborate to facilitate requirement of § 1006.12 and the Act generally, Plaintiff has suffered damages in negligence and the duty and breach portions of his prima facie negligence case are established by Defendants' violation of the statute. Plaintiff is thereby entitled to compensatory and punitive damages as awarded by the jury.

### Count XI – Defamation

212.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

213.    Defendants, through their agents, on myriad occasions since August 2019, published false statements about Plaintiff's and Plaintiff's school's non-compliance with the Act, and/or allowed or sanctioned such false statements to be published to third-parties, including news outlets and to persons at SBBC's August 20, 2019 Board/Charter Revocation meeting.

214.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not true.

215.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not pure opinion.

216.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not protected by a qualified business privilege.

217.    Defendants and their agents did not collaborate with Plaintiff to facilitate access to trained security personnel concerning their public statements about CAD-Davie's non-compliance and/or revocation of the charter.

218.    To the extent necessary, Plaintiff alleges Defendants acted with express malice, meaning an ill will, hostility, and/or evil intention to defame and injure.

219.    Plaintiff's career, reputation, and ability to find another position as a Principal have been negatively impacted by Defendants' defamation of him concerning non-compliance with the Act, effectively notifying any prospective employer (and others third-parties) that he put students in danger by being non-compliant with the Act (but with no context, including that over twenty other comparator schools were also not compliant, but nothing happened to them (i.e. no revocation, no termination of Principal).

220.    Because of Defendants' acts and omissions in this regard, Plaintiff has been damaged as a result of these (false) publications by their agents and has been defamed.

221.    As a direct and proximate result of Defendants' acts and omissions in publishing false statements about Plaintiff and his school, Plaintiff has suffered damages and is thereby entitled to compensatory and punitive damages as awarded by the jury.

## Count XII – Slander

222.    Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

223.    Defendants, through their agents, on myriad occasions since August 2019, published false statements about Plaintiff's and Plaintiff's school's non-compliance with the Act, and/or allowed or sanctioned such false statements to be published to third-parties, including news outlets and to persons at SBBC's August 20, 2019 Board/Charter Revocation meeting.

224.    Defendants, through the statements of their agents, used defamatory words which tended to prejudice Plaintiff in his reputation, office, business, or means of livelihood.

225.    The language used by Defendants with third-parties and the public concerning Plaintiff tended to degrade him, bring him into ill repute, destroy confidence in his integrity, and/or cause similar injury(ies), was slanderous in nature.

226.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not true.

227.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not pure opinion.

228.    Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not protected by a qualified business privilege.

229.    Defendants and their agents did not act in good faith toward Plaintiff concerning their public statements about CAD-Davie's non-compliance and/or revocation of the charter.

230.    To the extent necessary, Plaintiff alleges Defendants acted with express malice, meaning an ill will, hostility, and/or evil intention to defame and injure.

231.    Plaintiff's career, reputation, and ability to find another position as a Principal have been negatively impacted by Defendants' slanderous statements of him concerning non-compliance with the Act, effectively notifying any prospective employer (and others third-parties) that he put students in danger by being non-compliant with the Act (but with no context, including that over twenty other comparator schools were also not compliant, but nothing happened to them (i.e. no revocation, no termination of Principal).

232.    Because of Defendants' acts and omissions in this regard, Plaintiff has been damaged as a result of these (false) publications by their agents and has been slandered.

233.     As a direct and proximate result of Defendants' acts and omissions in publishing false statements about Plaintiff and his school, Plaintiff has suffered damages and is thereby entitled to compensatory and punitive damages as awarded by the jury.

### Count XI – Libel

234.     Plaintiff realleges and incorporates paragraphs 1-94 as if fully set forth herein.

235.     Defendants, through their agents, on myriad occasions since August 2019, published false statements about Plaintiff's and Plaintiff's school's non-compliance with the Act, and/or allowed or sanctioned such false statements to be published to third-parties, including news outlets and to persons at SBBC's August 20, 2019 Board/Charter Revocation meeting.

236.     Defendants, through the statements of their agents, used defamatory words which tended to prejudice Plaintiff in his reputation, office, business, or means of livelihood.

237.     The language used by Defendants with third-parties and the public concerning Plaintiff tended to degrade him, bring him into ill repute, destroy confidence in his integrity, and/or cause similar injury(ies), was libelous in nature.

238.     Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not true.

239.     Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not pure opinion.

240.     Defendants' and their agents' statements about CAD-Davie's non-compliance with the Act was not protected by a qualified business privilege.

241.     Defendants and their agents did not act in good faith toward Plaintiff concerning their public statements about CAD-Davie's non-compliance and/or revocation of the charter.

242.    To the extent necessary, Plaintiff alleges Defendants acted with express malice, meaning an ill will, hostility, and/or evil intention to defame and injure.

243.    Plaintiff's career, reputation, and ability to find another position as a Principal have been negatively impacted by Defendants' libelous statements of him concerning non-compliance with the Act, effectively notifying any prospective employer (and others third-parties) that he put students in danger by being non-compliant with the Act (but with no context, including that over twenty other comparator schools were also not compliant, but nothing happened to them (i.e. no revocation, no termination of Principal).

244.    Because of Defendants' acts and omissions in this regard, Plaintiff has been damaged as a result of these (false) publications by their agents and has been slandered.

245.    As a direct and proximate result of Defendants' acts and omissions in publishing false statements about Plaintiff and his school, Plaintiff has suffered damages and is thereby entitled to compensatory and punitive damages as awarded by the jury.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendants their officers, successors, assigns and all persons in active concert or participation with them, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b) Award Plaintiff judgment against Defendants for compensatory damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits he would have received absent the discriminatory and retaliatory treatment;

SALAS LAW FIRM, P.A.

(d)  Enter judgment for punitive damages against Defendants, and

(e)  Award all reasonable attorneys' fees and costs incurred in connection with this action;

and any other further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of January, 2020.

> //s//Michael G. Green II, Esq.
> SALAS LAW FIRM, P.A.
> 8551 West Sunrise Boulevard
> Suite 300
> Plantation, FL 33322
> Office: (954) 315-1155
> Fax: (954) 452 -3311
> Email:  michael@jpsalaslaw.com
> Fla. Bar. No. 60859
>
> //s//John P. Salas, Esq.
> SALAS LAW FIRM, P.A.
> 8551 West Sunrise Boulevard
> Suite 300
> Plantation, FL 33322
> Office: (954) 315-1155
> Fax: (954) 452 -3311
> Email: jp@jpsalaslaw.com
> Fla. Bar. No. 87593